IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 26-cv-01968-SKC

OLMAN EMILIO EUCEDO DUARTE,

Petitioner,

v.

ICE FIELD OFFICE DIRECTOR, and
JUAN BALTAZAR, Warden, Denver Contract Detention Facility,

Respondents.

---

**ORDER**

---

Before the Court is Petitioner Emilio Eucedo Duarte's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Dkt. 1. Petitioner is a citizen of Honduras who is currently detained at an ICE facility in Aurora, Colorado. *Id.* at 5. The relevant facts are not disputed. On February 20, 2023, Petitioner presented himself at the Brownsville, Texas, Port of Entry without a visa or other entry document and requested asylum. Dkt. 12-1 ¶ 5 (Declaration of Deportation Officer S. Blea). U.S. Customs and Border Protection determined Petitioner was inadmissible, processed him for removal, and paroled him into the United States until February 19, 2024. *Id.* at ¶¶ 6-7.

On January 11, 2026, ICE encountered Petitioner in Colorado Springs, arrested and detained him, and on the same day issued and personally served a Notice to Appear commencing removal proceedings under 8 U.S.C. § 1229a, classifying him as an arriving alien, and charging inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* at ¶¶ 9-10. On March 6, 2026, Petitioner filed an application for asylum and withholding of removal. *Id.* at ¶ 11. DHS then filed Additional Charges of Inadmissibility/Deportability, adding a charge under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document). *Id.* at ¶ 12.

On April 24, 2026, an Immigration Judge denied asylum, withholding of removal, and CAT protection, and granted voluntary departure until May 25, 2026, with an alternative order of removal to Honduras. *Id.* at ¶ 13. Petitioner appealed to the BIA on May 13, 2026. *Id.* at ¶ 14. Petitioner did not depart by May 25, 2026, so the voluntary departure order converted to a removal order, which is not administratively final because an appeal before the BIA remains pending. *Id.* at ¶ 15.

On May 6, 2026, Petitioner filed his § 2241 application in this Court. Dkt. 1. The application recounts that ICE arrested Petitioner at his home and initiated removal proceedings in January 2026. *Id.* at 6. Petitioner emphasizes that his arrest was triggered solely by the expiration of his parole status, even though his asylum

application remains pending. *Id.* at 7. Petitioner maintains that he has no criminal history in the United States, is not considered a flight risk or security risk, holds employment authorization valid through October 2029, is financially independent, and pays his taxes. *Id.* Based on these facts, Petitioner asserts two claims.

First, he argues that Respondents lack statutory authority under § 1225 to detain him. (*Id.*). Second, he contends that his continued detention violates his Fifth Amendment due process rights, citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), for the proposition that freedom from government custody and physical restraint lies at the heart of the liberty interest the Due Process Clause protects. *Id.* at 9. As relief, Petitioner asks the Court to assume jurisdiction over the matter, issue a writ of habeas corpus requiring Respondents to release him within one day, and grant any other relief the Court deems just and proper. *Id.* at 10.

The Court ordered Respondents to show cause why a writ of habeas corpus should not be granted. The government has responded. Dkt. 12. Respondents argue that because Petitioner presented at a port of entry seeking admission to the United States, he is an arriving alien detained under 8 U.S.C. § 1225(b)(1) and his detention is mandatory during the ongoing removal proceedings. *Id.* at 5-8. They contend that Petitioner's temporary parole did not alter his status as an "arriving alien," which reverted to § 1225(b)(1) upon parole's end, so § 1226(a) does not apply. *Id.* As for Petitioner's constitutional challenge, they assert due process is satisfied by the

statutory scheme for arriving aliens and does not require bond hearings under *Jennings v. Rodriguez*, 583 U.S. 281 (2018). Petitioner has not filed a reply, and the time to do so has passed.

The Court has jurisdiction over this matter under Section 2241 of Title 28, which authorizes it to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[T]he traditional function of the writ is to secure release from illegal custody." *Id.* Noncitizens may properly challenge the lawfulness of their detention through habeas proceedings. *Zadvydas*, 533 U.S. at 687-88.

The Court has considered the application, the government's response, and the governing law. Because Petitioner's challenge is fundamentally legal in nature, the Court declines to hold a hearing. *See* 28 U.S.C. § 2243. For the following reasons, the Court DENIES the application.

## STATUTORY FRAMEWORK

### A. The Removal Process

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 established two main processes for removing noncitizens who are deemed ineligible to enter or remain in the United States. *See Dep't of Homeland Sec. v.*

*Thuraissigiam*, 591 U.S. 103, 107 (2020). The "usual removal process"—commonly referred to as "Section 240"—involves an evidentiary hearing before an immigration judge, where a noncitizen may "attempt to show that he or she should not be removed." *Id.* at 108. These are adversarial proceedings where noncitizens have the right to hire counsel, examine the evidence against them, present their own evidence, and cross-examine witnesses. 8 U.S.C. § 1229a(b)(4)(A)-(B). These proceedings are recorded, often take months to resolve, and upon a decision by an immigration judge, are appealable to the Board of Immigration Appeals. 8 C.F.R. §§ 1003.1, 1240.15. The BIA order is, in turn, appealable to a U.S. Court of Appeals. 8 U.S.C. § 1252.

The second process provides for expedited removal. 8 U.S.C. § 1225(b)(1). Under this provision, noncitizens who satisfy two criteria may be subject to expedited removal. *Id.* Under the first criterion, noncitizens are "inadmissible" to the United States because they either lack proper entry documents or they engaged in fraud or willfully misrepresented a material fact on their application for admission. 8 U.S.C. § 1225(b)(1)(A)(i). The second criterion provides that noncitizens fall into at least one of two categories: (1) they are "arriving in the United States," 8 U.S.C. § 1225(b)(1)(A)(i) ("Arriving [Noncitizen] Provision"); or (2) they "have not been admitted or paroled" into the United States and have "not affirmatively shown" to an immigration officer's satisfaction that they have been

"physically present in the United States continuously for [a] 2-year period immediately prior to the date of the determination of inadmissibility[,]" *id.* § 1225(b)(1)(A)(iii)(II) ("Designation Provision").

Unlike the usual removal process, "the expedited removal order is usually issued within a few days, if not hours." *Make the Rd. New York v. Noem*, No. 15-cv-190 (JMC), 2025 WL 2494908, at *3 (D.D.C. Aug. 29, 2025). In these proceedings, noncitizens typically have no opportunity to review the evidence against them or prepare a defense. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(2)(iii). And there is almost no opportunity for judicial review. 8 U.S.C. § 1252(a)(2)(A). However, if the noncitizen indicates an intention to apply for asylum or has a fear of persecution, the noncitizen will be referred for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii). If the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen shall be detained for further consideration of the application for asylum. 8 U.S.C. § 1225(b)(1)(B)(ii).

**B. The Detention of Noncitizens**

The Immigration and Nationality Act contemplates two options for detaining noncitizens pending removal proceedings. *Hernandez v. Baltazar*, No. 1:25-cv-03094-CNS, 2025 WL 2996643, at *3 (D. Colo. Oct. 24, 2025). The first, § 1225, enumerates the procedures by which the government must detain certain "applicants for

admission" into the United States. 8 U.S.C. § 1225(a)(1). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrived in the United States." *Id.* The INA defines "admission" as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by the immigration officer." 8 U.S.C. § 1101(a)(13)(A). Section 1225(b) requires the detention of two groups of "applicants for admission." *See* 8 U.S.C. § 1225(b)(1), (2). To the first grouping, § 1225(b)(1), *supra*, applies to noncitizens who (1) are inadmissible because they lack proper documentation or because they engaged in fraud or willful misrepresentations in their applications, and (2) fall within the "Arriving [Noncitizen] Provision" or the "Designation Provision." 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II). To the second grouping, § 1225(b)(2) applies "in the case of [a noncitizen] who is an applicant for admission, [where] the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Noncitizens detained under § 1225, no matter which grouping, are not entitled to bond hearings. *See Jennings*, 583 U.S. at 297.

Under narrow circumstances, detained noncitizens may be temporarily paroled. *See* 8 U.S.C. § 1182(d)(5)(A). Section 1182 provides that the "Secretary of Homeland Security may . . . in his discretion parole into the United States . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States." *Id.* But such parole "shall

not be regarded as an admission of the [noncitizen] and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled." *Id.*; 8 C.F.R. § 1.2 (explaining that arriving alien "remains an arriving alien even if paroled . . . and even after any such parole is terminated or revoked"); *see also Thuraissigiam*, 591 U.S. at 139 (Noncitizens "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'") (internal citations omitted).

## ANALYSIS

### A. Petitioner is subject to mandatory detention under § 1225(b).

Petitioner presented at a port of entry in 2023, without a valid entry document, seeking admission and asylum, and was classified as an "arriving alien." Even though Petitioner was paroled into the United States, his parole expired on February 19, 2024. Applicants for admission detained under § 1225(b) are not entitled to bond hearings and parole is not admission; upon parole's end, the noncitizen returns to the same applicant-for-admission status. *See Depelian v. Baltazar*, No. 25-cv-03765-SKC-TPO, slip op. at 8 (D. Colo. Jan. 20, 2026) (concluding that "[a]fter his parole was terminated, Petitioner returned to his status of 'applicant for admission' or 'arriving alien' pursuant to statute"). Petitioner's current detention is governed by § 1225(b)(1), and the record reflects his posture as an arriving alien in removal proceedings before

the Executive Office for Immigration Review. Under the statutory framework summarized above, § 1225(b) governs and detention is mandatory—§ 1226(a) does not apply. *See id.* at 9 ("Because Petitioner is detained pursuant to § 1225(b), he is not entitled to a bond hearing, and Respondents are not in violation of the INA."). Therefore, Petitioner's claim that Respondents lack statutory authority to detain him under § 1225 fails.

**B. Petitioner does not state a due process violation.**

Petitioner also argues that his continued detention violates his Fifth Amendment due process rights. The Court disagrees.

Petitioner is an applicant for admission under § 1225(b). Accordingly, he is treated for purposes of due process as if stopped at the border. *See Thuraissigiam*, 591 U.S. at 139; *see also Lin v. Almodovar*, No. 1:25-cv-9639-MKV, 2025 WL 3706626, at *3 (S.D.N.Y. Dec. 22, 2025) (citing cases). An applicant for admission is only provided the procedures authorized by Congress. *Zadvydas*, 533 U.S. at 692-94. As such, "whatever the procedure authorized by Congress is, it is due process." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (cleaned up).

The applicable parole statute requires that parole be terminated "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." 8 U.S.C. § 1182(d)(5)(A). The governing regulation provides that "[p]arole shall be automatically terminated without written notice . . . at the

expiration of the time for which parole was authorized, and . . . the alien shall be processed," and "[a]ny further inspection or hearing shall be conducted under [8 U.S.C. § 1225 or 1229a]." 8 C.F.R. § 212.5(e)(1)-(2). Thus, when Petitioner's parole expired on February 19, 2024, it automatically terminated with no written notice required, 8 C.F.R. § 212.5(e)(1). That is all the process to which Petitioner was entitled. *See Sierra*, 258 F.3d at 1218-20 ("[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," and procedural due process was satisfied where "[n]either the statutes nor the governing regulations require[d] a hearing on parole withdrawal").

Petitioner does not allege any other misstep by the government that could sustain a due process claim. As explained above, noncitizens detained under § 1225(b) have no right to a bond hearing before an immigration judge—their detention is mandatory. *See Jennings*, 583 U.S. at 297-98. And although his § 2241 application cites *Zadvydas* as support for a due process claim based on his prolonged detention, that case does not apply here because Petitioner is not subject to an administratively-final order of removal. Petitioner's procedural due process claim therefore fails.

## CONCLUSION

For the reasons shared above, Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 is **DENIED without prejudice**.[1]

DATED: August 18, 2026.

BY THE COURT:

S. Kato Crews
United States District Judge

[1] While the Court finds that Petitioner's due process rights have not been violated at present, given that he is still being detained pending the ongoing appeal of the immigration judge's decision, his prolonged detention could eventually violate due process. *See Abdul Kadir v. Larose*, No. 25-cv-1045-LL-MMP, 2025 WL 2932654, at **4-5 (S.D. Cal. Oct. 15, 2025) (citing cases).